UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **SPARTANBURG REGIONAL,** | : | Case No. 1:05MC060 |
| **HEALTHCARE SYSTEM** | : | |
| | : | (Miscellaneous Action) |
| | : | |
| Plaintiff, | : | From: 7:03-2141-26 |
| | : |      **District of South Carolina** |
| v. | : |      **(Spartanburg Division)** |
| | : | |
| **HILLENBRAND INDUSTRIES, INC.,** *et al.*, | : | **JUDGE KATHLEEN O'MALLEY** |
| | : | |
| Defendants. | : | <u>**ORDER**</u> |
| | : | |

    This miscellaneous matter arises on *Invacare Corporation's Motion to Quash Subpoena Duces Tecum* ("Motion to Quash") (Doc. 1), wherein non-party Invacare Corporation ("Invacare") seeks to quash the subpoena *duces tecum* served upon it by Defendant Hillenbrand Industries, Inc. and/or Hill-Rom Company, Inc. ("Hill-Rom") in connection with the underlying case, which is currently pending in the United States District Court for the District of South Carolina (Spartanburg Division) under the above-referenced case caption. In sum, Invacare argues that the information sought is privileged, trade secret and that the requests are overbroad and/or unduly burdensome. Opposition and reply briefs have been filed (Docs. 3 and 4).

    For the reasons briefly outlined below Invacare's Motion to Quash is **GRANTED** in part and **DENIED** in part.

**I.    BACKGROUND**

    Currently pending in the District of South Carolina is the underlying antitrust case in which, based on the Second Amended Complaint filed in that case and the papers filed here, the Plaintiff

alleges that Hill-Rom has attempted to monopolize the "specialty hospital bed market," thereby stifling competition and enabling it to charge supra-competitive prices. In connection with its defense, Hill-Rom subpoenaed various business documents from Invacare, a company that Hill-Rom views as a "competitor" in the relevant product market. That subpoena gives rise to the issues presently before this Court, which has jurisdiction over the territory in which the subpoena was served – i.e., the Northern District of Ohio.

On June 28, 2005, Hill-Rom issued to Invacare a subpoena *ducus tecum* listing eight (8) document requests. Following various discussions and correspondence regarding Invacare's concerns with the requests, Invacare responded by letter on July 7, 2005, addressing several of the requests and objecting to others. Ultimately, that response left unresolved <u>three</u> of the eight request – specifically, requests two, three and seven. Having been unable amicably to resolve their dispute with regard to those requests, Invacare has moved to quash those aspects of Hill-Rom's subpoena *duces tecum*.

## II.     DISCUSSION

Invacare argues in its motion that Hill-Rom demands *proprietary* information relating to Invacare's current business and marketing practices and marketing plans with regard to several of its products, each of which Invacare maintains *do not compete* with Hill-Rom's products. Notwithstanding its primary argument that the information sought is trade secret, Invacare argues that the information sought is irrelevant because Invacare does not compete with Hill-Rom. Invacare further argues that Hill-Rom's requests are overbroad and unduly burdensome. It also asks the Court to consider its "non-party" status as a factor in determining whether it should be burdened with the disclosure of the requested information.

2

Hill-Rom responds that requests two, three and seven are relevant because they seek information directly connected to its defense in the underlying antitrust case; more specifically, information regarding the viability and relative success of a competitor, Invacare. Such "success," Hill-Rom argues, necessarily undercuts the Plaintiff's underlying antitrust claim, thereby making documents supporting such success relevant.

In response to Invacare's more technical argument that its products do not "compete" with Hill-Rom's products because Invacare's products – in this case, beds – are sold mostly to patients for use in "home healthcare" settings (while Hill-Rom's products are sold to "medical centers and hospitals"), Hill-Rom responds that the Plaintiff's underlying antitrust claims are not limited to beds sold only to hospitals. Despite the Plaintiff's use of the term "Standard Hospital Bed" in the Second Amended Complaint, Hill-Rom accurately points out that the Plaintiff defined that term as including surfaces (*i.e.*, beds) used in "sub-acute" settings such as long-term care facilities and home care settings. Hill-Rom argues, therefore, that hospital-type beds of varying types, regardless of the context in which they are utilized (*e.g.*, home healthcare settings or hospitals), are at issue in the underlying case.

Hill-Rom further argues that the subpoena's "Competing Product" definition, which incorporates a "Patient Care Beds" definition, clearly captures Invacare's bed products. Hill-Rom bases its understanding of Invacare's product line on Invacare's marketing literature and website, which broadly characterize Invacare's patient care bed products as including various types of therapy surfaces for use in various patient care settings. In sum, Hill-Rom maintains that, indirectly or otherwise, Invacare is a competitor for purposes of the underlying antitrust claims. Hill-Rom maintains, therefore, that those requests contingent upon the existence of "competing products" (*i.e.*,

3

requests two and three) are relevant.

Relative to whether the requested are information is trade secret, or otherwise worthy of enhanced protection, Hill-Rom responds that the type of information sought is commonly disclosed in connection with third-party discovery in antitrust cases of this type and should not be withheld based on trade secret.  More importantly, however, Hill-Rom avers its willingness to submit to judicially-enforced protective measures (*e.g.*, the Consent Confidentiality Order currently in place in the underlying case) to assure the protection of any disclosed documents.

In its reply brief, Invacare responds that it would have no recourse if one of the parties in the underlying case violated the existing Consent Confidentiality Order because that order was issued by the district court in South Carolina (Spartanburg Division).[1]  It then points out that no similar order has been issued by this Court, or any other.  Though Hill-Rom has not responded to this argument, it is reasonable to assume that Hill-Rom's willingness to submit to a protective order is not limited to an order enforceable only by the district court in South Carolina.

### A. Legal Standard.

Fed. R. Civ. P. 45(c)(3)(A) provides that a federal district court shall quash or modify a subpoena if it 1) fails to allow a reasonable time for compliance, 2) requires disclosure of privileged or other protected matter and no exception or waiver applies, or 3) subjects a person to an undue

---

[1] Invacare's focus here appears not to be on the sufficiency of the Consent Confidentiality Order's terms; rather, on the scope of the order's enforceability.  If a party to the underlying case – which is necessarily, then, a party to the Consent Confidentiality Order – violates the terms of that order, Invacare clearly would have recourse against that party in the underlying case *via* the South Carolina district court's jurisdiction over that party.  Invacare's concern that a similar order has not been issued by this Court can be remedied by this Court's 1) adoption of the Consent Confidentiality Order from the underlying case, or 2) endorsement of an independent order.

burden. While Rule 45 directly does not address relevancy objections, such obligations must be considered in light of Rules 26 and 34. *See In re Application of Apollo Advisors, L.P.*, MDL No. 863**,** 1993 U.S. Dist. LEXIS 7927, \*6 (D.N.Y., 1993).

Thus, this Court must examine whether a request contained in a subpoena *duces tecum* is overly broad or seeks irrelevant information under the same standards set forth in Rule 26 and as applied to Rule 34 requests for production of documents. *See Dean v. Anderson*, No. 01-2599-JAR**,** 2002 U.S. Dist. LEXIS 11536, \*8 (D. Kan., 2002). Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Id.*; *see also Scott v. Leavenworth Unified School Dist. No. 453*, 190 F.R.D. 583, 585 (D. Kan. 1999).

### B. Analysis.

Based on the limited information available in the context of the instant motion, and the relatively low relevancy standard, the Court finds that Invacare and Hill-Rom likely compete such that the information sought is relevant to the underlying antitrust claims. Invacare's argument that the subpoena should be quashed because Invacare is not one of Hill-Rom's competitors, therefore, is not well-taken.

Accordingly, the information sought may be withheld only if one of Rule 45(c)(3)(A)'s express elements applies – *i.e.*, in this case, Invacare's concern that the requests seek trade secrets and/or are otherwise overly broad or unduly burdensome. Having considered the proffered requests in light of these elements, the Court finds that <u>request number three is overly broad and unduly burdensome</u> in light of the basis for relevance in the underlying case; and, <u>requests two and seven</u>

require production so long as a confidentiality order is in place that carefully guards against disclosure or misuse of the disclosed information. As outlined in more detail below, this Court is willing to issue an order in addition to the Consent Confidentiality Order that already exists in the underlying case, if Invacare believes that is necessary.

### 1. Document Request No. 3.

Request number three of the subpoena requests information relating to Invacare's business planning and strategic analyses in the relevant product market. Specifically, it requests the production of:

> Business planning and competitive and strategic analysis documents, board and committee meeting minutes, and data compilations and analyses concerning:
> - (a) competition in the markets for the Competing Products;
> - (b) entry by new competitors in the markets for the Competing Products;
> - (c) whether the prices of Competing Products, including your products, net of any discounts, have increased or decreased over time in any manner;
> - (d) your actual or forecasted business and/or financial performance with respect to the Competing Products; and
> - (e) comparisons between Competing Products that you and your competitors sell or rent.

*See* Doc. 1, Ex. A.

Despite the Court's determination that Invacare's business activities are relevant to the underlying antitrust case against Hill-Rom, a determination admittedly made within the limited context defined by the documents available to this Court at this time, boundaries exist as to the

breadth of Hill-Rom's ability to discover even relevant information. In light of Hill-Rom's explained basis for relevance *vis-a-vis* the underlying antitrust case, the Court finds that request number three is overbroad in so far as it seeks information that is much more sensitive than the information sought in requests two and seven, but not as likely to lead to evidence that will support Hill-Rom's defense in the underlying case.

Further, the Court finds that compiling the requested documents, to the extent they even exist in readily producible form, would be an undue burden on Invacare. Accordingly, the Court concludes that the probative value of the information sought in Hill-Rom's third request does not outweigh Invacare's business interest in keeping the information private, nor the burden that would befall Invacare if it were compelled to produce the information. As to request number three, therefore, Invacare's Motion to Quash is **GRANTED** and Invacare need not respond.

### 2. Document Requests Nos. 2 and 7.

Requests two and seven of the subpoena, however, requests information relating to, among other things, sales, market share of competing products and documentation relating to "group purchasing." These topics directly relate to Hill-Rom's defense in the underlying case. Specifically, these paragraphs request:

> *[Paragraph 2]* With respect to Competing Products (as narrowly defined above), only those financial, planning or summary documents sufficient to show:
> (a) annual unit sale or rental revenue from the sale or rental of each such product;
> (b) your share of the United States market for each such product;
> (c) those companies with which you compete for sales or rentals of each such products and their respective

        shares of the United States market for each such product;

   (d) the date on which you first introduced, or entered the market for, each such product;

   (e) your list sales prices or list rental rates for each such product; and

   (f) discounts, rebates or other incentives that you or your competitors offered to customers or prospective customers.

*[Paragraph 7]* All documents concerning any actual or proposed group purchasing agreements with a Group Purchasing Organization ("GPO") or Integrated Delivery Network ("IDN").

*See* Doc. 1, Ex. A.

Upon balancing Hill-Rom's legitimate need for the information requested in support of its defense in the underlying antitrust case against Invacare's understandable interest in guarding against unfettered disclosure of its private business information, the Court finds that Hill-Rom's discovery interests outweigh Invacare's business interests and the information should be produced to Hill-Rom. Bearing in mind the merit of Invacare's proprietary-based argument in support of non-disclosure, however, and Hill-Rom's willingness to submit to a protective order, the Court further finds that the information disclosed should be protected by an order that carefully guards against the disclosure or misuse of the information. In so far as Hill-Rom has already agreed that a confidentiality order is appropriate – indeed, it nominates the existing Consent Confidentiality Order to be applied to the instant information – it should have no objection to the Court's decision herein.

Accordingly, as to requests two and seven, Invacare's Motion to Quash is **<u>DENIED</u>** and Invacare shall respond in conformity with the guidelines set forth below.

### III.    CONCLUSION

The Court finds that Hill-Rom's third request is overly broad and unduly burdensome in light of the explained basis for relevance *vis-a-vis* the underlying antitrust case. Accordingly, as to that request, Invacare's Motion to Quash is **GRANTED** and Invacare need not respond.

As to Hill-Rom's second and seventh requests, however, the Court finds that the information sought is discoverable, conditioned upon the existence of a confidentiality order that carefully guards against disclosure or misuse of the information. Accordingly, as to those requests, Invacare's Motion to Quash is **conditionally DENIED**.

Within ten (10) days of the date of this Order, Invacare and Hill-Rom shall either: 1) file for approval by this Court a joint proposed confidentiality order;[2] or 2) file a proposed order indicating this Court's adoption of the existing Consent Confidentiality Order (they shall also provide a copy of the Consent Confidentiality Order).

No later than thirty (30) days after this Court's endorsement of one of the two aforementioned orders, Invacare shall respond to requests two and seven of Hill-Rom's subpoena. Hill-Rom shall bear the costs of Invacare's production of the information requested in paragraphs two and seven.

**IT IS SO ORDERED.**

                                                  **s/Kathleen M. O'Malley**
                                                  **KATHLEEN McDONALD O'MALLEY**
**Dated: September 9, 2005**                   **UNITED STATES DISTRICT JUDGE**

---

[2] If Invacare and Hill-Rom reach an impasse as to any term, they shall submit a joint proposal, indicating areas of disagreement. As to terms upon which they disagree, each entity shall provide proposed language. The Court will then determine what language to employ for the disputed terms.